WARD *v.* ATLANTIC COAST LINE RAILROAD CO.

No. 485. Argued March 31, 1960.—Decided April 18, 1960.

*Neal P. Rutledge* argued the cause and filed a brief for petitioner.

*Sam T. Dell, Jr.* argued the cause for respondent. On the brief were *L. William Graham, Norman C. Shepard* and *Frank G. Kurka.*

PER CURIAM.

In this action under the Federal Employers' Liability Act, 35 Stat. 65, as amended, 45 U. S. C. §§ 51–60, the Court of Appeals for the Fifth Circuit, by a divided court, affirmed a judgment in favor of the respondent railroad entered on a jury verdict in the District Court for the Northern District of Florida. 265 F. 2d 75. We granted certiorari, 361 U. S. 861, to consider the issues presented in the light of our decisions in *Sinkler* v. *Missouri Pacific R. Co.,* 356 U. S. 326, and *Baker* v. *Texas & Pacific R. Co.,* 359 U. S. 227. The latter is an intervening decision.

The railroad employed the petitioner as a laborer in a section gang with a regular work-week from Monday through Friday. The petitioner was injured on a Saturday, ordinarily the gang's day off, when the gang, super-

vised by their foreman, using the work tools supplied by the railroad, and following standard railroad methods for doing the work, were replacing ties under a siding track which ran off the railroad's main line tracks to the plant of the M. & M. Turpentine Company. That company had an agreement with the railroad calling for the railroad to make periodic inspections of the track and for the repairs disclosed to be necessary by such inspections to be made by and at the expense of the Turpentine Company "to the satisfaction of the [railroad's] Chief Engineer." When an inspection revealed the need for the work in question, the Turpentine Company engaged the petitioner's foreman to recruit his crew to do the work on their day off under his direction. The foreman offered the crew railroad overtime rates of pay for doing the work, but there is a sharp conflict in the evidence whether he told the crew that they would not be working for the railroad but for someone else. The foreman paid the wages with funds supplied to him by the Turpentine Company.

The petitioner contends that the proofs require a holding as a matter of law that the Turpentine Company, in the maintenance of the siding, was the "agent" of the respondent railroad within the meaning of § 1 of the Federal Employers' Liability Act, 45 U. S. C. § 51, as we construed that term in *Sinkler* v. *Missouri Pacific R. Co.*, *supra.* We find no merit in this contention. Indeed, we do not think that the proofs presented a jury question whether the Turpentine Company was the railroad's "agent" within the meaning of the Act. This was not a situation, as in *Sinkler,* in which the railroad engaged an independent contractor to perform operational activities required to carry out the franchise. This was a siding privately owned by the Turpentine Company and established to service it alone. In maintaining it, we do not see how it can be said under the proofs that the Turpen-

tine Company was "engaged in furthering the operational activities of respondent." *Sinkler* v. *Missouri Pacific R. Co., supra,* at 331. Even the use of the siding by local farmers in harvest time to load respondent's cars with watermelons, a fact heavily relied upon by the petitioner, was, according to uncontradicted testimony, not at the instance of the railroad but because the President of the Turpentine Company "leased this track—I guess that is what you would call it—anyhow, he let those farmers load watermelons out there on that track and he always repaired it every year before watermelon time."

However, we agree with the petitioner's alternative contention that the trial judge erred in refusing to instruct the jury as requested by the petitioner,[1] and in giving the

---

[1] The requested instructions were the following:

"One of the issues to be decided in this case is whether or not the plaintiff, Raymond P. Ward, was employed by the defendant railroad at the time he was injured. This issue must be determined from all of the circumstances of the case. The primary factor to be considered is whether or not the railroad had the power to direct, control, and supervise the plaintiff in the performance of his work at the time he was injured. Other relevant factors to be considered are: who selected and engaged the plaintiff to perform the work; who furnished the tools with which the work was performed; who paid the plaintiff his wages for the performance of the work; the amount of scale of such wages; and who had the power to fire or dismiss the plaintiff from the work.

"If you find that the railroad, through its foreman, I. H. Keen, had the power to direct, control and supervise the plaintiff in the performance of the work he was doing at the time he was injured, then you should find that the plaintiff was employed by the defendant railroad at the time he was injured.

"The fact that the money used to pay the plaintiff Ward for the work he was doing at the time he was injured came originally from some third person with whom the railroad or the owner of the spur track had made an arrangement, does not remove the defendant railroad from its employer-employee relationship with the plaintiff Ward and does not relieve the defendant railroad of liability for

instructions he did,[2] as to the factors to be considered by the jury in determining whether the petitioner was an "employee" of the railroad during the performance of the work within the meaning of the Act. The instructions given in effect limited inquiry to the question whether the petitioner was aware that the railroad considered him not to be working for it but for some third

injuries suffered by the plaintiff during the course of his railroad employment as a result of the defendant railroad's negligence.

"The accident here involved occurred upon a spur track which was partly owned by the M. & M. Turpentine Co. The fact that the M. & M. Turpentine Co. had contracted with the defendant railroad to maintain all or a portion of this spur track does not relieve the defendant railroad of its liability to the plaintiff if the plaintiff was injured during the course of his employment with the defendant railroad on the spur track as a direct consequence, in whole or in part, of the defendant railroad's negligence."

[2] The pertinent portion of the court's charge was as follows:

"That the Railroad Company was liable unless the defendant's foreman made it clear to him before he started to work that morning that they were not working for the Railroad, but working on a private track to make some extra money. I think I put it just about that simply, didn't I, to make some extra money. I told you that if the foreman failed to make that disclosure to him, ordered him to go out there and go to work, and put him to work on that private track, the Railroad Company would be liable. I don't see how I can say it any plainer. Do you have a word that you think I could use to make it any plainer?

"Mr. Rutledge: Your Honor, to make it clear he was working for some third person and not working for the Railroad.

"The Court: Yes sir, that is the word I believe he suggested— that he was working for some third person. The foreman had to make it clear to him that he was working for some third person and not the Railroad. I thought I said it, but I guess I didn't spell it out as much as he wanted, but I want to make that clear to you. If you find from this evidence he was so advised before he went out there to work, and he went out on his own volition and joined the others to make some extra money, then he was not an employee of the Railroad Company and they would not be liable."

party. But neither the railroad's communication of its concept of petitioner's status to petitioner, nor his acquiescence therein, if shown, is determinative of the issue. Cf. *Cimorelli* v. *New York Central R. Co.*, 148 F. 2d 575, 578. The parties' characterization is but one factor to be considered among others, see Restatement, Agency 2d, § 220 (2)(i), and the issue is one for determination by the jury on the basis of all the relevant factors. *Baker* v. *Texas & Pacific R. Co.*, *supra.*

*Reversed.*

MR. JUSTICE FRANKFURTER would dismiss this writ of certiorari as improvidently granted. As the Court's opinion demonstrates, the case solely presents the appropriateness of instructions given by a trial court and the refusal of requested instructions in the light of the unique circumstances of a particular situation. As such it falls outside the considerations which, according to Rule 19 of this Court, govern the granting of a petition for certiorari. See *Ferguson* v. *Moore-McCormack Lines*, 352 U. S. 521, 524 (dissenting).

MR. JUSTICE HARLAN, with whom MR. JUSTICE WHITTAKER joins, dissenting.

Since I consider that, except as to the one issue submitted to the jury, there is no evidence in the record tending to establish any of the usual criteria showing an employment relationship between the petitioner and the respondent in connection with this work, I dissent. See Restatement, Agency 2d, § 227, Comment a.